# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| **KRISTY SPANN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:25-cv-00005** |
| | ) | **Judge Aleta A. Trauger** |
| **TENNESSEE DEPARTMENT OF** | ) | |
| **CORRECTIONS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is the Motion to Dismiss (Doc. No. 19) filed by defendant Tennessee Department of Corrections ("TDOC"), which is directed to plaintiff Kristy Spann's First Amended Complaint (Doc. No. 16). Spann responded to the Motion to Dismiss by filing a Motion for Leave to File Amended Complaint ("Motion to Amend") (Doc. No. 24), specifically seeking leave to file her proposed Second Amended Complaint ("SAC") (Doc. No. 24-1). TDOC opposes the Motion to Amend. (Doc. No. 27.)

For the reasons set forth herein, the court will grant the Motion to Amend, thus permitting the filing of the Second Amended Complaint, and deny the Motion to Dismiss as moot, but without prejudice to the defendant's ability to seek dismissal of the claims set forth in the SAC.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiff Kristy Spann originally filed suit on January 16, 2025 against her former employer, TDOC, asserting claims for disability discrimination in violation of the Americans with Disabilities Act ("ADA") and its state analog, the Tennessee Disability Act; gender discrimination

in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Tennessee Human Rights Act; and retaliation in violation of each of these statutory schemes. (Doc. No. 1.)

Belatedly recognizing that TDOC, as a Tennessee state agency, has sovereign immunity under the Eleventh Amendment to discrimination and retaliation claims under the ADA (*see* Doc. No. 24 ¶ 2), the plaintiff filed her first Amended Complaint ("FAC") on April 16, 2025 (Doc. No. 16), removing her disability-related claims and asserting only claims for gender discrimination and retaliation in violation of Title VII, based on several alleged adverse employment actions, including the plaintiff's purported constructive discharge on February 2, 2024.

TDOC responded by filing a Motion to Dismiss and supporting Memorandum (Doc. Nos. 19, 20), in which it argues that (1) the FAC fails to allege facts sufficient to support the plaintiff's gender discrimination claim; and (2) the FAC does not allege facts showing intolerable working conditions, as required to state a constructive discharge claim. The Motion to Dismiss does not directly address the plaintiff's claim that she suffered retaliation for engaging in protected activity when TDOC "transfer[red]/demot[ed] Spann to a different position." (FAC ¶ 41.)

Rather than addressing the Motion to Dismiss, the plaintiff filed her Motion to Amend, seeking permission to file the proposed SAC attached as an exhibit to her motion. (Doc. Nos. 24, 24-1.) The plaintiff expressly seeks to amend her pleading to incorporate additional facts to support her claims, and she asserts that she has not unduly delayed in filing the motion and that TDOC will not be prejudiced by the granting of her motion. (Doc. No. 24 ¶¶ 6–8, 10, 15.)

The SAC alleges that Spann began working for TDOC as an Administrative Assistant 2 in May 2022 but that, just after Spann was hired, she was given additional duties and the title of Prison Rape Elimination Act ("PREA") Compliance Manager. (SAC ¶¶ 9, 11.)

Spann alleges that throughout the time she was employed as a PREA Compliance Manager, "male managers would not properly report incidents or provide documents to [her] in a timely manner," and some stated that they did not want to work with a female. (*Id.* ¶ 13.) Spann "reported these issues," as they "hindered her ability to do her job duties," but the defendant "took no action." (*Id.*)

In September 2022, her supervisor, Cotham, asked her to "fill in" as Library Supervisor, a "security position and not administrative position," three days a week. (*Id.* ¶ 15.) The plaintiff agreed to do so, but "only temporarily until the role was filled by someone else." (*Id.*) Spann worked as both Library Supervisor and PREA Compliance Manager for a period of some months, while repeatedly complaining to her supervisor that she did not want to be in the library position and could not handle both roles and still complete her audit duties well. (*Id.* ¶¶ 16–18.) By 2023, she "gradually" began working the library job only two days a week. (*Id.* ¶ 18.)

In June 2023, she affirmatively told Cotham that she did not want to cover the Library Supervisor shifts, but "nothing changed." (*Id.* ¶ 19.) During the summer of 2023, Spann told the defendant that she was experiencing increased anxiety as a result of having to continue covering the library shifts on top of the demands of the Compliance Manager role and "rising conflicts" between her and the PREA Auditor appointed by the Tennessee Department of Justice. (*Id.* ¶ 20.) She requested that the Associate Warden be the point of contact with the auditor. No changes were made to the plaintiff's situation. (*Id.*)

A new Library Supervisor was hired in September 2023 but was assigned to perform different tasks than those the plaintiff had been performing. Spann continued working as a Library Supervisor one shift per week, covering security posts. (*Id.* ¶¶ 21–22.)

From October 2023 through January 2024, Spann continued having difficulty working with the Auditor and experiencing significant anxiety as a result. The Warden ignored her complaints and her request for an accommodation for her anxiety. (*Id.* ¶¶ 23–24.)

Meanwhile, as part of her PREA Compliance Manager job, she was required to "review prison conditions of all units, pods, the school, the kitchen, the laundry, the gym, the library, the clinic, the program buildings, and the chapel," even though prison security staff had performed these tasks in the past. (*Id.* ¶ 25–26) She was required to do these reviews "alone as the only female out of an audit team that included six other males." (*Id.* ¶ 26.) She also completed all of the "Inmate Retaliation" reviews, which required her to be alone with inmates, and she was "subjected to inappropriate sexual harassment by inmates" on several occasions while doing these reviews by herself. (*Id.* ¶¶ 27–28.) She reported this "harassment" to TDOC, but no action was taken and she was required to continue doing the reviews alone. (*Id.* ¶ 29.)

She told her supervisor in December 2023 that she would no longer cover the library shifts. (*Id.* ¶ 30.)

On December 21, 2023, the Warden praised Spann's audit work in an email. The audit documentation was completed that day. (*Id.* ¶ 31.) However, Spann apparently had to continue working on the audit, as the Warden instructed her in early January to put all other work aside and focus solely on the audit. The Warden ignored Spann's complaints about the difficulties she was experiencing with the audit. (*Id.* ¶¶ 32.)

In early January 2024, the plaintiff met with the Associate Warden and informed him of her increased anxiety in connection with her Compliance Manager duties. (*Id.* ¶ 34.) She met with the Associate Warden and the Warden on January 9 to discuss her ongoing conflicts with the Auditor. (*Id.* ¶ 35.) The plaintiff alleges that the defendant again took no action but then states that,

on the same day, she was "stripped of all duties for PREA Compliance Manager and Administrative Assistant 2" and told instead to report to the library, where she would work as Library Supervisor. (*Id.* ¶¶ 35–36.) Her audit duties were given to another Compliance Manager, Karen Coble. (*Id.* ¶ 37.)

The defendant told the plaintiff that her transfer to Library Supervisor was "due to her mental health condition." (*Id.* ¶ 38.) The plaintiff alleges that the Library Supervisor job was not an administrative position like the one she was hired to fill but one that required her to monitor and interact directly with inmates. (*Id.* ¶ 39.)

On January 11, 2024, the plaintiff submitted a written complaint alleging discrimination and retaliation. (*Id.* ¶ 40.) The plaintiff does not describe what actions she believed constituted discrimination or retaliation, but she appears to be claiming that her transfer to the Library Supervisor position was in retaliation for her complaints about discrimination and retaliation.

In any event, while working at the library, she was told on January 22, 2024 to return to work on the audit as of January 24, 2024. (*Id.* ¶ 41.) However, Spann had a doctor's appointment on January 23, 2024 and, at her doctor's instruction, "due to the condition of her mental health," she took leave from January 23 through January 30, 2024. She provided a doctor's note upon her return to work. (*Id.* ¶ 42.)

While she was on leave, another Records Manager, Stephanie Hendrix, filled in to perform Spann's audit duties. When Hendrix requested help, she was "provided experienced counselors," while the plaintiff, in the same role, had not been provided "experienced help." (*Id.* ¶ 43.)

When the plaintiff returned to work on January 30, 2024, she reported to Records as instructed to continue working on the audit. The Warden issued her a written warning "regarding her past performance and conduct issues such as inefficiency, incompetency, negligence,

insubordination from when she was previously working on the audit." (*Id.* ¶ 44.) The plaintiff believed this written warning was a "pretext for discrimination and/or retaliation," and she refused to sign the written warning. (*Id.*)

Spann asserts that, "[d]ue to the unknown status of her job moving forward, illegal discrimination and retaliation, and other conditions she was subjected to, [she] was constructively discharged and forced to resign on February 2, 2024." (*Id.* ¶ 45.)

The plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC Charge") on May 1, 2024 (*see* Doc. No. 27-1); she received her Notice of Right to Sue before filing this lawsuit (SAC ¶ 7).

The plaintiff did not file a copy of her EEOC Charge, but the defendant attached a copy of it to its Response in Opposition to the Motion to Amend. (Doc. No. 27-1.) In the EEOC Charge, the plaintiff checked the boxes for discrimination based on race, sex, retaliation, and disability, and she identified October 2023 through February 2024 as the time period during which the discrimination occurred. (Doc. No. 27-1 at 4.)

In the narrative section of the EEOC Charge describing the events giving rise to her claims, Spann focused primarily on her anxiety disorder and her disability claims related to the defendant's failure to accommodate her anxiety. As pertains to her gender-based discrimination and retaliation claims and the alleged adverse employment actions, the plaintiff stated as follows:

> 8. [Charging party ("Cp")] was required to do reviews of prison conditions alone for the audit as a part of a team of seven (7) individuals where Cp was the only female.
>
> 9. On several occasions Cp was subjected to inappropriate sexual harassment by inmates while doing reviews alone. Cp reported these events to Respondent. No action was taken and Cp was still required to do the reviews alone.
>
> 10. Cp met with her supervisor, Brad Cotham, in January 2024 and informed him again of her increased anxiety due to the addition of the PREA Compliance Manager duties.

11. Cp requested to meet with the Warden on January 9, 2024 in order to inform him of her difficulties, but the Warden never responded to her request.

12. On January 10, 2024, Respondent stripped Cp of all her duties for PREA Compliance Manager and Administrative Assistant 2 and told Cp to report to the prison library where Cp was to work until further notice.

. . . .

14. The job in the library which Cp was transferred to was not an administrative position like the one Cp was originally hired to do. Instead, it was a position requiring Cp to monitor and interact directly with inmates.

15. On January 11, 2024, Cp made a written compl[ai]nt alleging discrimination and retaliation from Respondent.

16. Due to the unknown status of her job moving forward, illegal discrimination and retaliation, and other conditions she was being subjected to, Cp was constructively discharged from her employment on February 1, 2024.

17. Cp was discriminated against based on her disabilities in violation of the ADAA, due to her sex in violation of Title VII and retaliated against in violation of Title VII and the ADAA. Respondent's actions against Cp were done intentionally, willfully, and/or with reckless indifference to her rights as protected by the ADAA and Title VII. Cp has suffered losses and continues to suffer losses due to Respondent's violations.

18. Cp notes that these facts are not exhaustive. Cp has not had the opportunity to review documents or converse with witnesses prior to the filing of this charge so as to refresh her memory as to additional evidence.

(Doc. No. 27-1 at 5.)

In opposing the Motion to Amend, the defendant argues only that the proposed amendment is futile based on a failure to administratively exhaust, insofar as the new factual allegations are outside the "permissible scope of claims that could reasonably result from [the] EEOC charge" and "attempt to expand the scope and nature of Plaintiff's EEOC charge of discrimination." (Doc. No. 27 at 2.) More specifically, TDOC challenges the addition of new facts to support the constructive discharge claim as unexhausted, and it contends that any new facts that appear to support a hostile work environment claim are futile because the EEOC Charge does not include a hostile work environment claim. (*Id.* at 2–4.)

The plaintiff has filed a Reply, arguing that the new facts alleged in the SAC concerning constructive discharge, gender discrimination, and retaliation "do not raise new legal claims requiring separate exhaustion" and instead simply "expand upon these issues and are reasonably related to the investigation that would follow." (Doc. No. 28 at 3, 4.) Spann specifically disavows any intention to bring a stand-alone hostile work environment claim. (*See id.* at 3 ("Spann has not asserted a standalone hostile work environment cause of action.").) Rather, she intended the new factual allegations to "add[] support [for] the broader pattern of discriminatory treatment that led to Spann's constructive discharge and support the severity of the conditions she endured." (*Id.*)

As discussed below, the court finds that the proposed amendment is not futile for failure to exhaust, which is the sole basis for the defendant's objection. Accordingly, the Motion to Amend will be granted, and the also-pending Motion to Dismiss the First Amended Complaint will be denied as moot.

## II.     LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading "once as a matter of course" within twenty-one days after serving it or twenty-one days after service of a motion to dismiss. Fed. R. Civ. P. 15(a)(1)(A)–(B).

Otherwise, once that window is closed, Rule 15(a)(2) allows a party to amend its pleading only with the opposing party's consent or by leave of court. Rule 15(a)(2) adds that a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Despite this "liberal amendment policy," the denial of a motion to amend "may be appropriate when there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Brown v. Chapman*, 814 F.3d 436, 443 (6th Cir.

2016) (first quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002); and then *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)). The party opposing a motion to amend has the burden of establishing futility. *Mason Sales, LLC v. Talent Creation, Ltd.*, No. 3:24-cv-00092, 2025 WL 696529, at *4 (M.D. Tenn. Mar. 4, 2025) (Newbern, M.J.) (citations omitted).

## III. DISCUSSION

### A. Exhaustion Requirement

Before filing suit in federal court, a Title VII plaintiff must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC and receiving a right-to-sue letter. *Alexander v. Univ. of Memphis*, No. 20-5426, 2021 WL 2579973, at *3 (6th Cir. June 7, 2021) (citing *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018)). The exhaustion requirement, while not jurisdictional, is a mandatory "claim-processing rule" that must be enforced if properly raised by the employer. *Id.* (citations omitted).

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [her] EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). The EEOC charge "must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Id.* (quoting 29 C.F.R. § 1601.12(b)). "This requirement serves to put employers on notice and gives the EEOC the opportunity to investigate or settle the dispute." *Golden v. Mirabile Inv. Corp.*, 724 F. App'x 441, 445 (6th Cir. 2018) (citing *Younis*, 610 F.3d at 361). "In considering whether a plaintiff adequately included a claim in his EEOC charge, the Court construes the EEOC complaint liberally, and 'consider[s] claims that are

reasonably related to or grow out of the factual allegations in the EEOC charge.'" *Id.* (quoting

*Younis*, 610 F.3d at 362). "[W]here facts related with respect to the charged claim would prompt

the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing

suit on that claim." *Id.* (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)).[1]

### B.        The Constructive Discharge Claim

The failure to exhaust administrative remedies may be a basis for dismissal of Title VII

claims. *Hoover v. Timken Co.*, 30 F. App'x 511, 512 (6th Cir. 2002). And where a proposed

amended claim cannot withstand a motion to dismiss, it qualifies as "futile." *Riverview Health*

*Inst.*, 601 F.3d at 512. Here, TDOC argues that the plaintiff has included new factual allegations

regarding her work as a Library Supervisor in 2022 and 2023 to support her claim of constructive

discharge, but "none of these allegations were contained in her EEOC charge. Instead, the EEOC

charge focuses solely on Plaintiff's duties with the PREA audit during this time." (Doc. No. 27 at

3 (citing EEOC Charge, Doc. No. 27-1 ¶¶ 4–9.) TDOC asserts that an EEOC investigator "would

have no reason to look into Plaintiff's work in the library during that time, because Plaintiff only

alleged that she was assigned to work in the library on January 10, 2024," and she "limited the

constructive discharge allegation in her EEOC charge to 'the unknown status of her job moving

---

[1] TDOC argues that a liberal construction of the plaintiff's EEOC Charge is inappropriate in this case because Spann was represented by counsel. (Doc. No. 27 at 4.) However, the Sixth Circuit has noted that "the fact that we liberally construe EEOC charges filed by *pro se* complainants 'does not mean that a broad reading may not, or should not, be given in cases where a plaintiff has counsel.'" *Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010) (quoting *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 536 (6th Cir. 2001)). While the EEOC Charge in this case appears, based on the defendant's filing, to have been submitted by plaintiff's counsel, there is no evidence in the record here regarding whether counsel assisted Spann in preparing the EEOC Charge. At this juncture, the court will construe the EEOC Charge liberally.

forward, illegal discrimination and retaliation, and other conditions she was being subject to' in 2024." (*Id.* (quoting Doc. No. 27-1 ¶ 16.)

The court is not persuaded that the plaintiff's failure to allege more particular facts in her EEOC Charge regarding her library work makes the proposed amendment futile. The plaintiff was not required to allege every relevant *fact* in her EEOC Charge; instead, she only need to set forth facts sufficient to put the EEOC and the defendant on notice of a particular *claim*. *Accord Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992) (recognizing that a Title VII plaintiff is not required "to allege in an EEOC charge each and every fact that combines to form the basis of each claim"); *Haire v. Farm & Fleet of Rice Lake, Inc.*, No. 21-CV-10967, 2022 WL 128815, at \*13 (E.D. Mich. Jan. 12, 2022) ("A 'plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint.'" (quoting *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).

In this case, the plaintiff clearly asserted a constructive discharge claim in her EEOC Charge, in connection with her being transferred to work at the library, and she characterized the transfer as both discriminatory and retaliatory. Irrespective of whether Spann's allegations about working at the library in 2022 and 2023 are relevant to her constructive discharge claim, the court finds that the constructive discharge claim in the EEOC Charge and the facts supporting it, though sparse, were sufficient to put the TDOC on notice of such a claim and to prompt an investigation by the EEOC into the factual bases for that claim. In other words, the proposed amendment is not futile insofar as it simply alleges additional facts to support the constructive discharge claim first raised in the EEOC charge.

### C. Hostile Work Environment Claim

As set forth above, TDOC next argues that new allegations in the SAC that Spann reported issues with male coworkers but that the defendant took no action (*see* SAC ¶ 13) do not actually

support a gender discrimination claim and would only be relevant if the plaintiff were asserting a hostile work environment claim. TDOC asserts that, because the EEOC Charge did not assert a hostile work environment claim, the claim is not administratively exhausted, and the plaintiff is barred from raising it now. (*See* Doc. No. 27 at 3 ("No such claim was asserted in Plaintiff's EEOC charge, and she is not permitted to add it now.").) Similarly, TDOC asserts that the plaintiff's new allegations that she was required to do prison reviews alone, which purportedly made her the target of inappropriate sexual harassment by inmates, would only be relevant if Spann had asserted a hostile work environment claim in her EEOC charge and, therefore, are futile. (*See id.* ("Because Plaintiff cannot add a hostile work environment claim that was not included in her EEOC charge, these amendments are also futile.").)

The fact that the defendant has raised only the issue of futility but has not reiterated any of its challenges to the plaintiff's claims that were set forth in its Memorandum in support of its Motion to Dismiss serves to substantially narrow the scope of this court's review of the Motion to Amend. Here, despite the fact that the plaintiff clearly asserted in her EEOC Charge that she was subjected to "sexual harassment"—albeit by prisoners rather than co-workers—she has now expressly disavowed an intention to assert a stand-alone hostile work environment claim. Therefore, Spann's allegations of additional facts that potentially bolster her claims of discrimination based on gender are not an attempt to assert a new, unexhausted claim. The new facts are clearly related to other facts alleged in the EEOC Charge, specifically including the allegation that the plaintiff was subject to sexual harassment while doing "reviews of prison conditions alone." (*See* Doc. No. 27-1 ¶ 9.) In this sense, the proposed amendment is not futile, for the same reason that the amendment is not futile insofar as it alleges new facts to support the administratively exhausted constructive discharge claim.

The defendant's objection to the Motion to Amend argues only that the amendment is futile because it raises unexhausted claims. The defendant has not raised—and the court does not address—futility based on the failure to state a claim for which relief may be granted.

## IV. CONCLUSION

For the reasons set forth herein, the plaintiff's Motion to Amend will be granted, and the plaintiff will be directed to file the SAC as a stand-alone pleading. The defendant's Motion to Dismiss will be denied as moot. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge