**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **KRISTY SPANN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:25-cv-00005** |
| | ) | **Judge Aleta A. Trauger** |
| **TENNESSEE DEPARTMENT OF** | ) | |
| **CORRECTION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

After amending her Complaint once as a matter of course, plaintiff Kristy Spann sought and was granted leave to file her Second Amended Complaint ("SAC") (Doc. No. 31). The SAC asserts claims of employment discrimination on the basis of sex and retaliation under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §2000e *et. seq.* Now before the court is the Motion to Dismiss Second Amended Complaint (Doc. No. 32) filed by defendant Tennessee Department of Correction ("TDOC") (Doc. No. 32). The motion is actually a motion for partial dismissal, as TDOC concedes that Count II of the SAC states a colorable claim for retaliation. The defendant argues only that the sex discrimination claim in Count I and the constructive discharge claims asserted in both Count I and Count II should be dismissed as a matter of law under Rule 12(b)(6) of the Federal Rules of Civil Procedure. As set forth herein, the motion will be granted.

I.      **STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6); *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *see also* Fed. R. Civ. P. 8(a)(2). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (2007). A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

## II.    FACTS

Plaintiff Spann became employed by TDOC as an Administrative Assistant 2 in May 2022. (SAC ¶ 9.) She was allegedly "forced to resign" on February 2, 2024. (*Id.* ¶ 45.) Based on the allegations in the SAC, the plaintiff consistently complained about the workload she was assigned and other matters.

Shortly after being hired, the plaintiff was asked to take on additional duties and given the title of Prison Rape Elimination Act ("PREA") Compliance Manager, as TDOC was preparing for an audit by the Tennessee Department of Justice. (*Id.* ¶ 11.) Around June 1, 2022, the plaintiff complained to her supervisor, Brad Cotham, Associate Warden of Treatment, that she did not feel

properly trained for the Compliance Manager position. Cotham assured her that she would receive the "training she needed." (*Id.* ¶ 12.)

While she was Compliance Manager, male managers failed to report incidents or provide documentation to Spann in a timely manner. Some stated they "did not want to work with a female." (*Id.* ¶ 13.) Spann complained about these issues to her supervisors, but nothing was done. (*Id.*)

In September 2022, Cotham asked Spann to fill in Library Supervisor shifts three days a week under a "bonus incentive program," and Spann agreed to do so temporarily until the role of Library Supervisor was filled by someone else. (*Id.* ¶ 15.) The library job was a "security position" rather than an administrative position. (*Id.*)

Meanwhile, Spann was still fulfilling her Administrative Assistant 2 and Compliance Manager duties, "working on the audit," during her regularly scheduled shifts. (*Id.* ¶ 16.) She "consistently" complained to Cotham and other supervisors that she could not perform both of these jobs at the same time and still complete the audit duties well. (*Id.* ¶ 17.)

Spann reduced her library shifts to two per week by 2023. She did not want to work in the library at all but kept doing so because Cotham asked her to. (*Id.* ¶ 18.) In June 2023, she "mentioned" again to Cotham that she did not want to keep working in the library, but "nothing changed," and she kept working there two days per week. (*Id.* ¶ 19.)

During the summer of 2023, Spann complained (she does not say to whom) about anxiety resulting from continuing to work library shifts while also working as Compliance Manager and "back-up Compliance Manager" for another employee, in addition to "rising conflicts" between her and the third-party auditor employed by the Tennessee Department of Justice, Deborah Dawson. (*Id.* ¶ 20.)

After a full-time Library Supervisor was hired in September 2023, Spann reduced her library shifts to one per week. (*Id.* ¶ 23.) However, Spann was responsible for different tasks than those performed by the new Library Supervisor. (Id. ¶ 21.)

In October 2023, Spann met with Warden Chris Brun and asked for "guidance and clarifications," because she had never experienced a state audit. She also discussed her increased anxiety and difficulties working with the auditor. TDOC "took no action." (*Id.* ¶ 23.)

Spann's difficulties in working with the auditor increased over the months from October 2023 through January 2024, further increasing Spann's anxiety. The warden ignored Spann's request for "guidance or an accommodation for her anxiety." (*Id.* ¶ 24.)

Spann's job as Compliance Manager required her to do security rounds of various areas of the prison. She was required to "do these reviews alone as the only female" on the audit team that included six men. (*Id.* ¶ 26.) She was also required to complete "Inmate Retaliation reviews," which required her to be alone with prison inmates in a room with a closed door. She was subjected to "inappropriate sexual harassment by inmates while doing reviews alone." (*Id.* ¶ 28.) She complained about this "harassment," too, but "[n]o action was ever taken." (*Id.* ¶ 29.)[1] She does not allege continued sexual harassment after she reported it, however.

She took a week of sick leave in December 2023. When she returned to work, she told Cotham she would no longer cover any library shifts. (*Id.* ¶ 30.)

On December 21, 2023, the associate warden praised Spann's work on the audit. (*Id.* ¶ 31.) On January 8, 2024, Spann sought to meet with the warden again to remind him of the difficulties she was facing with the audit, but he did not respond other than to tell her to put her other work

---

[1] Spann does not identify the TDOC facility at which she worked. The court presumes, based on her allegations, that it housed male inmates.

aside and focus on the audit.[2] (*Id.* ¶ 32.) She requested additional guidance in a response email. (*Id.* ¶ 33.) At some point she complained again to the associate warden of her increased anxiety due to her Compliance Manager duties, and she met with both the warden and associate warden on January 8, 2024 to complain some more about her conflicts with the auditor. (*Id.* ¶ 35.)

The same day, on January 9, 2024, Spann was "stripped" of her Compliance Manager and Administrative Assistant 2 duties and told to report to the library. (*Id.* ¶ 36.) She was told she would work as Library Supervisor until further notice, unless she wanted to use leave for the remainder of the week. (*Id.*) She was told that the transfer was "due to her mental health condition." (*Id.* ¶ 38.) Her audit duties were given to Karen Coble, another Compliance Manager. (*Id.* ¶ 37.)

The library position was a "security" position, requiring direct contact with and monitoring of inmates, rather than an administrative position like the one Spann had initially been hired to fill. (*Id.* ¶ 39.)

On January 11, 2024, Spann submitted a formal complaint to TDOC alleging discrimination and retaliation. (*Id.* ¶ 40.)

Spann reported for work at the library on January 22, 2024 (apparently having taken leave instead of reporting to work at the library on January 9, 2024). However, at the end of that day, she received an email directing her to "return to working on the audit" on January 24, 2024. (*Id.* ¶ 41.) Spann went to a doctor's appointment on January 23, 2024. Her doctor directed her to take leave from January 23, 2024 to January 30, 2024, "due to the condition of her mental health." (*Id.* ¶ 42.) She provided the doctor's note upon her return to work. (*Id.*)

---

[2] Confusingly, the SAC asserts that the audit was already completed and submitted by this time. (*See* SAC ¶ 31.)

While the plaintiff was on leave, Stephanie Hendrix, who filled in during the plaintiff's absence, requested help; unlike Spann, Hendrix was provided help from "experienced counselors." (*Id.* ¶ 53.)

On January 31, 2024, when Spann returned to work on the audit, the warden issued her a written warning for past performance and conduct issues, charging her with inefficiency, incompetence, negligence, and insubordination. (*Id.* ¶ 44.) Spann refused to sign the warning and objected to its being placed in her personnel file. (*Id.*)

Spann claims she was "forced to resign" on February 2, 2024, "[d]ue to the unknown status of her job moving forward, illegal discrimination and retaliation, and other conditions she was subjected to." (*Id.* ¶ 45.) She characterizes her resignation as a constructive discharge. After resigning, she applied for over a dozen open TDOC positions in various counties, but received no job offers. (*Id.* ¶ 46.)

## III. DISCUSSION

### A. Sex Discrimination

Title VII prohibits employers from discriminating against any employee on the basis of sex, among other protected characteristics. 42 U.S.C. § 2000e-2(a)(1). "[A]t the motion-to-dismiss stage, a plaintiff bringing an employment discrimination claim need only satisfy the plausibility standard of *Twombly*." *Menge v. City of Highland Park,* No. 21-10152, 2022 WL 54544, at *8 (E.D. Mich. Jan. 5, 2022) (citing *Smith v. Wrigley Mfg. Co.*, 749 F. App'x 446, 448 (6th Cir. 2018)). And, as set forth above, a complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, to avoid dismissal of her Title VII claim, the plaintiff must allege sufficient facts from which an inference of discrimination on the basis of sex could be drawn, including that there is

some causal connection between her sex and any adverse employment action she suffered. *Accord, e.g.*, *Smith*, 749 F. App'x at 448 ("The district court found that Smith's complaint did not plausibly link her age and her termination because it merely recited the elements of an age discrimination claim. We agree.").

Based on the facts alleged above, the plaintiff claims that she faced "disparate treatment in the workplace because of her gender," insofar as she was "treated less favorably than her male coworkers and treated differently by the Warden due to her gender." (SAC ¶ 48.) She also claims that she was "discriminated against, harassed, demoted, and constructively discharged due to her gender." (*Id.* ¶ 49.)

TDOC points out that the "sole factual references" to Spann's gender in the SAC are when she alleges that unnamed co-workers "did not want to work with a female," that she was the only woman on a seven-person audit team, and that she was subjected to sexual harassment by inmates. (Doc. No. 32 at 3 (citing SAC ¶¶ 13, 26, 28.) TDOC argues that none of these allegations suggests that Spann was treated differently or less favorably than her male colleagues; that harassment by prison inmates is an expected job hazard for individuals employed at prisons (*see* Doc. No. 32 at 4 (citing *Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669, 677 (6th Cir. 2000))); and that, in any event, she does not allege continued harassment by inmates after she reported it.

In her Response to the Motion to Dismiss, the plaintiff asserts that the SAC "sets forth specific facts demonstrating that Spann was subjected to ongoing disparate treatment and harassment after raising concerns—treatment that her male counterparts did not endure." (Doc. No. 33 at 5.) As an example, she claims that she was required to do inmate reviews alone, while "male colleagues . . . were not placed in similarly vulnerable positions." (*Id.* at 6.) But she does not actually make such an allegation in the SAC. She complains that the defendant could have

assigned a male employee to accompany her or reassign the task, but she does not make that allegation in the SAC either. She points to her complaints of anxiety and requests for accommodations as being followed by a reassignment to a lower-status position, but these allegations are irrelevant to her sex discrimination claim, and she has expressly abandoned any disability-related claims.

The court finds that the SAC, whose well pleaded allegations are accepted as true and viewed in the light most favorable to the plaintiff, does not contain "factual content that allows the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that TDOC is liable for discriminating against Spann based on sex. Although the plaintiff alleges that she is female, she does not allege facts from which the court may reasonably draw the inference that similarly situated male employees were treated better than she was or that there is a causal connection between her gender and any adverse employment action.[3]

Finally, Spann also asserts that she expects "[d]iscovery will further show" that male employees were not burdened by being called upon to "simultaneously perform multiple high-responsibility roles." (*Id.*) However, a plaintiff is not entitled to discovery to unearth facts that might support her claims. *See Hall v. U.S. Bank, N.A.*, 626 F. App'x 114, 116 (6th Cir. 2015) (recognizing as a "well settled principle" that "a plaintiff who fails to state a claim is not entitled to further discovery" (citing *Mitchell v. McNeil*, 487 F.3d 374, 379 (6th Cir. 2007)).

The SAC tenders nothing more than the "'naked assertion[s]' devoid of 'further factual enhancement'" that *Twombly* and *Iqbal* prohibit. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

---

[3] The plaintiff alleges facts suggesting that *other female employees* were treated better than she was (*see, e.g.*, SAC ¶¶ 37 (the plaintiff's audit duties were given to Karen Cable), 43 (Stephanie Hendrix received help when she requested it, but the plaintiff did not)), but these allegations do not support the plaintiff's sex discrimination claim.

550 U.S. at 557). The plaintiff's sex discrimination claim will be dismissed for failure to state a claim.

### B.      Constructive Discharge

For both retaliation and discrimination claims under Title VII, "one essential element that the plaintiff must prove is that he suffered an adverse employment action." *Gorbe v. City of Lathrup Vill.*, No. 21-1532, 2022 U.S. App. LEXIS 11685, at \*12 (6th Cir. Apr. 28, 2022) (citing *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004)). A voluntary resignation "is not an adverse employment action unless the plaintiff can prove that he was constructively discharged." *Id.* (citing *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 549, 554–55 (6th Cir. 2008).

In this case, the plaintiff claims that she was "discriminated against, harassed,[4] demoted, and constructively discharged due to her gender." (SAC ¶ 49.) She also claims that she was retaliated against when TDOC "constructively discharge[ed] her from her employment." (*Id.* ¶ 55.)[5] TDOC moves for dismissal of both the discrimination and retaliation claims insofar as they are premised upon constructive discharge as the alleged adverse employment action.

Constructive discharge occurs when an employer creates "an objectively intolerable work environment to deliberately force [an] employee to resign." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 814 (6th Cir. 2020) (citation omitted). "[I]ntolerability is a demanding standard."

---

[4] In her Reply to the defendant's Response in Opposition to the plaintiff's Motion for Leave to File [Second] Amended Complaint, Spann specifically disavowed any intention to bring a stand-alone hostile work environment claim. (Doc. No. 28 at 3.) Her "harassment" allegation is apparently intended only to "add[] support [for] the broader pattern of discriminatory treatment that led to Spann's constructive discharge." (*Id.*)

[5] The plaintiff also asserts that TDOC retaliated against her by "transferring/demoting [her] to a different position." (SAC ¶ 55.) While denying liability, TDOC acknowledges that the SAC plausibly states a claim for retaliation, based on Spann's allegations that she was transferred shortly after she engaged in protected conduct.

*Id.* The conditions must be "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* (citation omitted). "[C]riticism and negative feedback do not suffice." *Id.* (citations omitted).

The Sixth Circuit has identified a non-cumulative list of factors that may be considered, alone or in combination, when deciding whether an employee's working conditions were "objectively intolerable," including

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001) (citing *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)); *see also Tchankpa*, 951 F.3d at 814 ("[W]e have said that demotion, reduction in salary, badgering, harassment, humiliation, and sexual assault suggest an objectively intolerable workplace."). The court has also observed that "a demotion in itself does not constitute a constructive discharge," but it may be "significant when coupled with the other factors." *Logan*, 259 F.3d at 571; *see also Russell v. CSK Auto Corp.*, 739 F. App'x 785, 795 (6th Cir. 2018) (finding no constructive discharge, even where the employee showed that he had suffered "a reduction in salary and continued employment on terms less favorable than the employee's former status").

Harassment alone is also not sufficient. In *Brister v. Michigan Bell Telephone Co.*, the plaintiff alleged harassing conduct by her supervisor, including being targeted for humiliation and criticism during meetings, being called stupid and other degrading terms during daily coaching sessions, being told that "everyone in the office hated her and did not want her there," and being told that she "needed to seek psychiatric help." *Brister*, 705 F. App'x 356, 360 (6th Cir. 2017). The Sixth Circuit held that this conduct by the supervisor, while "shameful and highly

inappropriate for a workplace," "by itself, [was] insufficient to establish a claim of constructive discharge," particularly because it only lasted three to four months. *Id.*

Similarly, in *Tchankpa*, the Sixth Circuit, noting that constructive discharge requires proof that employment conditions are "indeed hellish, or close to it," found that the plaintiff's proof that his employer had "(1) forc[ed] him to lift heavy laptops despite his shoulder injury; (2) den[ied] his work-from-home request; (3) threaten[ed] to fire him; (4) g[ave] other employees preferential treatment; and (5) g[ave] him unwarranted negative feedback" did not show that his workplace was "objectively intolerable." *Tchankpa*, 951 F.3d at 815.

In this case, Spann asserts that she was constructively discharged "[d]ue to the unknown status of her job moving forward, illegal discrimination and retaliation, and other conditions she was subjected to." (SAC ¶ 45.) Regarding the "unknown status of her job," the plaintiff seems to be alleging that it was unclear whether she was going to continue to work on the audit or to continue working in the library. Regardless, the SAC does not allege that conditions in either position were objectively intolerable; nor, as set forth above, does the SAC allege facts showing that the plaintiff suffered sex discrimination. Even if the plaintiff perceived the library position as a demotion, a demotion, does not give rise to a constructive discharge claim, even when considered in conjunction with the disciplinary write up and the plaintiff's claim that other (female) employees received preferential treatment.

The court finds, in short, that the allegations in the SAC, accepted as true for purposes of the defendants' Motion to Dismiss, do not allege truly "hellish" conditions so "objectively intolerable" that a reasonable person would have felt compelled to resign. *Tchankpa* v, 951 F.3d

at 814. The plaintiff's Title VII claims premised upon constructive discharge to provide the necessary adverse employment action, therefore, will be dismissed.[6]

## IV. CONCLUSION

For the reasons set forth herein, the defendant's Motion to Dismiss (Doc. No. 32), which is actually a motion for partial dismissal, will be granted. The plaintiff's sex discrimination claim will be dismissed in its entirety. Her retaliation claim premised on constructive discharge will be dismissed. Her retaliation claim premised on the plaintiff's transfer/demotion remains to be resolved.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

---

[6] To be clear, the plaintiff fails to state a claim for discrimination based on sex under Title VII, irrespective of which adverse employment action she seeks to attribute to discrimination.