IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| **KRISTY SPANN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:25-cv-00005** |
| | ) | **Judge Aleta A. Trauger** |
| **TENNESSEE DEPARTMENT OF CORRECTIONS,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM

Before the court is the Motion for Summary Judgment (Doc. No. 39) filed by defendant Tennessee Department of Corrections ("TDOC"), seeking dismissal of plaintiff Kristy Spann's claim of retaliation under Title VII of the Civil Rights Act of 1964—the sole remaining claim in this case. For the reasons set forth herein, the court will grant the motion and dismiss this case.

## I. LEGAL STANDARDS—RULE 56

Under Federal Rule of Civil Procedure 56, any party "may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

By its very terms, Rule 56 anticipates "that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating

a motion for summary judgment. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine.'" *Id.* at 248.

"[A] fact is 'material' within the meaning of Rule 56(a) if the dispute over it might affect the outcome of the lawsuit under the governing law." *O'Donnell v. City of Cleveland*, 838 F.3d 718, 725 (6th Cir. 2016) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id.*

## II. FACTS AND PROCEDURAL HISTORY

Spann was previously employed as the PREA[1] Compliance Manager for Turney Center Industrial Complex, a prison operated by TDOC. (Doc. No. 43, Pl.'s Resp. to Def.'s Statement of

[1] PREA, which stands for the Prison Rape Elimination Act of 2003, was enacted for the purpose of "implementing standards and policies to prevent prison rape and to 'protect the Eighth Amendment rights of Federal, State, and local prisoners.'" *Does 8-10 v. Snyder*, 945 F.3d 951, 955–56 (6th Cir. 2019) (quoting 34 U.S.C. § 30302).

Undisp. Material Facts ("RSUMF") ¶ 1.) According to the defendant, Spann's essential job duties in that position included "coordinating Turney Center's responses to the PREA audits conducted by the [Tennessee] Department of Justice." (Doc. No. 39-1, Brun Decl. ¶ 5.) In order to perform that duty, Spann was required to communicate with Deborah Dawson, the auditor appointed by the Tennessee Department of Justice ("DOJ"), and to provide her with any requested information. (RSUMF ¶ 2.)

On January 8, 2024, the plaintiff met with Christopher Brun, the Turney Center Warden at that time, and with Associate Warden of Treatment ("AWT") Brad Cotham. (*See* Doc. No. 42-4, "Recap Email.") During her deposition, Spann described that meeting as follows:

> [Brun] had told me that the DOJ auditor [Dawson] had complained that she's had numerous complaints about me of me not doing what's asked of me and all this stuff. And I started crying and told them I couldn't handle it, being in point of contact with her. That I have done everything she's asked. I've even told him that numerous times and yet I'm still to blame. I'm still at fault and yet nobody is helping. . . .
>
> And he said, so you're telling me [due to] your mental health you can't speak to the auditor and I said yes. That's what I'm asking. I'm asking for my AWT PREA coordinator who is supposed to be over this audit with me to be the point of contact.

(Spann Dep. 49–50.[2]) AWT Cotham told her he would handle the meeting with the auditor the next day, but Spann "left the office crying" because Brun "supported" the auditor instead of Spann. (*Id.* at 50.) She left the meeting feeling that she was "being hung out to dry." (*Id.*)

It was for this reason, for her "safety" (because she "did not feel [her] job was safe" with Warden Brun), that she wrote a follow-up email (the "Recap Email") to Brun the evening of January 8, 2024 that was intended to summarize what she understood had been decided at the

---

[2] Excerpts from Spann's deposition are in the record in two places: Doc. Nos. 39-2, Doc. No. 42-2.

January 8 meeting. (*Id.*) Her Recap Email purported to confirm four items that had been discussed at that meeting:

> (1) that the "Facility" meeting at 8:30 a.m. the next day would be conducted by AWT Cotham;
>
> (2) that, "[p]er Warden Brun," Spann's main priority was the PREA DOJ Audit, with all other PREA responsibilities being secondary;
>
> (3) that, "[p]er Warden Brun," "we're not going to tell the DOJ Auditor that we cannot speak to her at this time" but that any telephone conversations with the auditor going forward would be with the AWT or the Warden only; and
>
> (4) that the "Compliance Manager will come to PREA Compliance Manager's Office [*i.e.*, Spann's office] to look over each standard and required documentation."

(Doc. No. 42-4 at 2.)

Brun responded with an email at 8:02 p.m., telling Spann to be in his office at 9:00 a.m. the next day to "discuss how were [sic] moving forward with this PREA audit." (*Id.*) He also re-emphasized the point that she ("we") would not tell the DOJ auditor she did not have time to talk to her. (*Id.*; *see also* Spann Dep. 51.)

At the meeting the next morning, on January 9, 2024, Spann was demoted when Brun stripped her of her duties as PREA Compliance Manager. (Spann Dep. 51.) Brun told her it was "due to [her] not [being] able to communicate with the auditor due to [her] mental health, that [she] wasn't competent to do [her] job any further with the PREA compliance manager." (*Id.*) When Spann demanded an explanation, protesting that she had received nothing but positive reviews for her work up until that point, Brun repeated that it was, "basically, [her] mental health and not wanting to communicate with the DOJ auditor." (*Id.*) Spann also testified, however, that the Warden told her during the January 9 meeting that he was removing her PREA duties because of her sending the "recap" email. (*Id.* at 91.)

When Brun removed the plaintiff's PREA Compliance Manager duties, he informed her that he did not know what her new assignment would be but that she should report to the library "until [he] could find a new position for her." (Brun Decl. ¶ 9; Spann Dep. 51 (confirming that he told her to "report for now" to the library).)

On January 11, 2024, Spann submitted a written complaint of abusive conduct, retaliation, and "discrimination/harassment" to the Tennessee Department of Human Resources, complaining generally about her demotion, "abusive conduct," and "workplace intimidation." (Doc. No. 42-6.)

On January 31, 2024, Brun issued Spann a "Written Warning," the lowest level of discipline that can be issued to a TDOC employee, for inefficient performance of duties, incompetence and negligence in performance of her duties, conduct unbecoming an employee in state service, and refusal to accept a reasonable and proper assignment. (Doc. No. 42-7 at 2; Doc. No. 42-3, Brun Dep. 81.) The Written Warning was based on the plaintiff's continued refusal to communicate effectively with the DOJ auditor, Dawson. (Doc. No. 42-7 at 2.) According to Brun, he was unaware of the plaintiff's January 11 complaint when he issued the Written Warning. (Brun Dep. 84.) Spann resigned from her employment with TDOC a few weeks later, effective February 1, 2024. (Spann Dep. 67–68.) She characterized her resignation as a constructive discharge based on gender and retaliation. (SAC ¶¶ 49, 55.)

The plaintiff alleges in the SAC that she engaged in protected activity (1) when she "reported to Defendant inappropriate sexual harassment by inmates while doing reviews of prison conditions alone as the only female" and (2) when she "complained of disparate treatment due to her gender." (SAC ¶ 53.) It is now undisputed that, when Brun took away the plaintiff's PREA Compliance Manager duties, he was unaware that she had complained about sexual harassment by inmates. (RSUMF ¶ 6.)

As for her complaints about disparate treatment, Spann testified that she recalled complaining about discrimination or harassment three times while she was working at Turney Center (prior to the removal of her PREA compliance duties), but she could not remember when the first occurred. (Spann Dep. 71.) She also stated that she believed she had been "retaliated against" for those complaints by (1) Zac Pounds, then AWS at Turney, who complained to AWT Cotham that she was "making him look bad," as a result of which she was told to stop going to Warden Clendenion (prior to Brun's appointment) to complain about Pounds; (2) institutional investigator, Dustin Mackin, who also went to Warden Clendenion to complain that Spann was complaining to her direct supervisor about him; and (3) Chief Counselor Todd Staples, again because Spann complained to Warden Clendenion and the AWT that he was not doing his job, as a result of which she was again told to "stop speaking up about things that they're not going to change." (*Id.* at 71–74.) She identified others who, she believed, had made similar complaints about her, and some of these "issues" were ongoing after Brun became Warden. (*Id.* at 74–75.)

The plaintiff does not point to any evidence suggesting that the discrimination/retaliation she complained about during her deposition was connected to Warden Brun's decision to demote her by removing her PREA Compliance duties and reassigning her. Instead, the plaintiff insists that her Recap Email was the "basis for the Plaintiff's removal from PREA duties on January 9, 2024." (RSUMF ¶ 9 (citing Spann Dep. 91–92).)

Spann filed this lawsuit against TDOC in January 2025 and has amended her complaint twice. (Doc. Nos. 1, 16, 31.) The Second Amended Complaint set forth claims against TDOC for (1) sex discrimination in violation of Title VII, based on allegations of disparate treatment and constructive discharge; and (2) retaliation in violation of Title VII. (Second Am. Compl. ("SAC"), Doc. No. 31.) In February 2026, the court granted the defendant's partial Motion to Dismiss,

dismissing the plaintiff's Title VII discrimination claims (premised upon both disparate treatment and constructive discharge) and her retaliation claim premised upon the alleged constructive discharge as the adverse employment action, leaving for resolution only her retaliation claim based on her allegations that TDOC demoted or transferred her in retaliation for engaging in activity protected by Title VII. (Memo. & Order, Doc. Nos. 35, 36.)

TDOC now moves for summary judgment on the remaining retaliation claim. This claim, to be clear, is premised only upon the plaintiff's being stripped of her PREA Compliance Manager duties and transferred to work in the prison library on January 9, 2026. TDOC's motion is supported by a Memorandum of Law, Statement of Undisputed Material Facts, and the evidentiary material cited in support of its factual statements.((Doc. Nos. 39–41, 39-1 through 39-3.) The plaintiff filed a Response in opposition to the Motion for Summary Judgment, Response to the Statement of Undisputed Material Facts, and her own evidentiary materials. (Doc. Nos. 42, 43, 42-1 through 42-14.) The defendant filed a Reply in further support of its motion. (Doc. No. 44.)

**III. DISCUSSION**

As relevant here, it is unlawful under Title VII for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). A retaliation claim under Title VII that is premised upon circumstantial rather than direct evidence is analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under this framework, the plaintiff carries the initial burden of establishing a *prima facie* case of retaliation. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). If—and only if—she can do so, the burden then shifts to the defendant, who must "articulate some legitimate, non-discriminatory reason for [its] actions." *Id.* (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)). If the defendant

meets this burden, the plaintiff must then show that the defendant's articulated reason is a pretext for discrimination. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 804–05).

To establish a *prima facie* case of retaliation under Title VII, Spann must show that "(1) [she] engaged in activity protected by Title VII; (2) [her] exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to [Spann]; and (4) a causal connection existed between the protected activity and the materially adverse action." *George*, 966 F.3d at 459 (quoting *Laster*, 746 F.3d at 730).

The defendant argues that the plaintiff alleges two forms of protected activity in the SAC: (1) sexual harassment by inmates; and (2) complaints about disparate treatment. As indicated above, it is undisputed that Brun did not know that Spann had complained about sexual harassment by inmates when he removed her from the PREA Compliance Manager position. (RSUMF ¶ 6.) As a result, the plaintiff cannot establish a *prima facie* retaliation claim premised upon her complaints about sexual harassment by inmates. *Accord Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 148 (6th Cir. 2007) ("The decisionmaker's knowledge of the protected activity is an essential element of the *prima facie* case of unlawful retaliation." (citing *Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002)); *see also Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 482 (6th Cir. 2008) ("[E]ven to prove a causal connection, [the plaintiff] must establish that the decisionmakers involved in the [adverse action] at issue had knowledge of the protected activity.").

The second form of protected activity is the plaintiff's alleged complaints about disparate treatment. The defendant appears to concede for purposes of summary judgment that whether Brun knew about those complaints is disputed, but it argues that, regardless, the plaintiff cannot establish a causal connection between those complaints and Brun's decision to remove her from the PREA

position. It points to the plaintiff's testimony during her deposition, in which she alleged three instances—prior to Brun's tenure as Warden—when she complained that male supervisors at the prison did not provide her with needed documentation and did not communicate with her and claimed that she had been retaliated against for those complaints by Zac Pounds, Dustin Mackin, and Todd Staples. (Doc. No. 40 at 4 (citing Spann Dep. 72–74).) The defendant argues that there is no evidence in the record that Brun's removing the plaintiff's PREA duties on January 9, 2024 had anything to do with complaints the plaintiff had made at some indeterminate time in the past.

In response to the defendant's causation argument, the plaintiff pivots, asserting (as noted above) that the basis for the plaintiff's removal from her PREA duties on January 9, 2024 was her January 8, 2024 Recap Email. (Doc. No. 43 at 4 (citing Spann Dep. 91–92).) She argues that the "opposition clause"—presumably referencing Title VII's prohibition on retaliation for engaging in protected activity—is "broadly construed and covers communications that implicitly convey opposition to discriminatory working conditions." (*Id.* (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).)

This argument is without merit. Although the Supreme Court has indeed held that Title VII's antiretaliation provision is intended to "provide broad protection from retaliation," *Burlington Northern* concerned what type of activity by the employer can be deemed retaliatory, and it held that the "scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington N.*, 548 U.S. at 67. Here, the defendant does not dispute that the plaintiff's removal from her PREA position is the type of adverse action that could be deemed retaliatory. The question is whether that action is causally connected to *protected activity* by the plaintiff.

*Burlington Northern* did not expand the scope of what qualifies as protected activity. Protected activity under the antiretaliation provision includes "oppos[ing] any practice made an unlawful employment practice by this subchapter" and "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Under Title VII, it is an unlawful employment practice to discriminate against an individual "because of such individual's race, color, religion, sex, or national origin." *Id.* § 2000e-2(a). However broadly construed, the plaintiff's Recap Email cannot be read as "implicitly convey[ing] opposition" to discrimination based on sex or any other characteristic protected by Title VII. As set forth above, the meeting on January 8 concerned the plaintiff's and the auditor's complaints about communicating with each other, and the Recap Email simply set forth the plaintiff's understanding of what had been decided at that meeting. (Doc. No. 42-4.) She does not claim that she complained that her inability to communicate with Dawson was based on sex; nor does she contend that the Warden's refusal to provide her more support had anything to do with her sex. In short, the plaintiff's Recap Email did not constitute protected activity under Title VII. Accepting as true the plaintiff's allegation that Brun removed her from the PREA position because of the Recap Email, the court necessarily concludes that the plaintiff cannot establish a *prima facie* claim of retaliation based on that chain of events.

As indicated above, the plaintiff alleged in the SAC both that the removal of her PREA duties and her alleged constructive discharge constituted adverse employment actions, but her retaliation claim based on the constructive discharge was dismissed when the court granted the defendant's partial Motion to Dismiss. The only claim remaining following that ruling is the retaliation claim based on the plaintiff's demotion when Brun removed the plaintiff's PREA duties and sent her to work at the library in a security position. In her Response to the Motion for

Summary Judgment, the plaintiff continues to argue that she engaged in protected activity on January 11, 2024, *after* that decision was made, when she filed a formal complaint with the Tennessee Department of Human Resources naming Warden Brun and others and "alleging retaliation, discrimination, and intimidation." (Doc. No. 42 at 9 (citing Plaintiff's Exhibit E, Doc. No. 42-6).)

The SAC alleges that that complaint constituted protected activity and that it led to Brun's January 31, 2024 Written Warning and her resignation (which she characterized as a constructive discharge) days thereafter. (SAC ¶¶ 40, 44.) That retaliation claim, however, was dismissed when the court granted the defendant's partial Motion to Dismiss. Even if it had not already been dismissed, it would be subject to dismissal on the merits on summary judgment, for two separate reasons. First, Brun testified that he was unaware of the January 11 complaint when he issued the disciplinary write-up (Doc. No. 42-3, Brun Dep. 84), and the plaintiff has no evidence to the contrary. And second, even if he had known about it, the January 11 complaint does not constitute protected conduct under Title VII. In it, the plaintiff alleges "abusive conduct," "retaliation," and "discrimination/harassment," but she identifies the basis for this conduct as "other"—specifically, "intimidation." (*See* Doc. No. 42-6.) As she explained in the narrative portion of the January 11 complaint,

> These events occurred because I stood up for myself, would not allow anymore abusive conduct, workplace intimidation, and I wanted in writing verbal communication. When I return from sick leave on Tuesday, January 16, 2024 I will request in writing of the Warden stripping me of my job duties, moving me to the library, requesting my continued assistance with the DOJ audit, in return I will probably be fired on Tuesday January 16, 2024 because of this request.

(*Id.*) That is, the plaintiff did not complain about discrimination or retaliation on the basis of sex (or race, color, religion, or national origin) or other protected activity. While Title VII broadly protects against retaliatory conduct based on protected activity, the plaintiff's complaint to the

Tennessee Department of Human Resources does not qualify as protected activity. Instead, it is a general complaint by a disgruntled employee. *Accord Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015) ("Title VII does not protect an employee, however, if his opposition is merely a 'vague charge of discrimination.'" (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir.1989)); *Batuyong v. Gates*, 337 F. App'x 451, 456 (6th Cir. 2009) (holding that the plaintiff did not engage in a "protected activity" because she "presented no evidence that any of her grievances . . . were related to race discrimination").

In sum, the plaintiff cannot prove retaliation based on her demotion from the PREA Compliance Manager position because (1) she has no evidence that Brun's decision was causally related to any prior complaints of disparate treatment based on sex; and (2) the plaintiff's January 8 Recap Email, which she claims was the cause of her demotion, does not qualify as protected activity under Title VII. As for the plaintiff's retaliation claim based on constructive discharge, even if that claim had not already been dismissed, it fails on the merits, because (1) the plaintiff cannot show that Brun knew about it when he drafted the January 31 Written Warning, so she cannot establish a causal connection between the two; and (2) even if there were a connection, the plaintiff's January 11 complaint to the Tennessee Department of Human Resources also does not qualify as protected activity under Title VII.

## IV. CONCLUSION

For the reasons set forth herein, the defendant's Motion for Summary Judgment (Doc. No. 39) will be granted, and this case will be dismissed in its entirety. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge